UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2006-W5,<br><br>                                    Plaintiff,<br><br>                -against-<br><br>HUGO BANCES, et al.,<br><br>                                 Defendants. | **ORDER**<br><br>25-CV-01690 (PMH) |

PHILIP M. HALPERN, United States District Judge:

Deutsche Bank National Trust Company ("Plaintiff") initiated this action on February 27, 2025 (Doc. 1) and filed the Amended Complaint—the operative pleading—on April 9, 2025, seeking to foreclose on a mortgage executed by defendant Jean Bances ("Bances") and Hugo Bances ("Hugo"), and adding as defendants YRH Property Corp. ("YRH") and New York State Department of Taxation and Finance (Doc. 14). On July 22, 2025, the Court held a telephonic Initial Pre Trial Conference ("IPTC"), attended by the following individuals: counsel for Plaintiff, Samantha Millar; counsel for YRH, Jessica Kastner; Bances, appearing *pro se*; and non-party/non-attorney Ronnie Cox, employee of the Westchester County Department of Senior Programs and Services ("Cox"). During the IPTC, among other items, the Court considered YRH's application for a default judgment against Bances (*see* Doc. 56). YRH's application is premised on Bances' failure to respond to YRH's cross claim to quiet title on the property identified as 24 Kress Avenue, New Rochelle, New York 10801 (the "Subject Property") (*see* Doc. 51; Doc. 52; Doc. 53, "YRH Br."; Doc. 54; Doc. 56), the property at issue in Plaintiff's mortgage foreclosure claim. (Doc. 14, "Am. Compl."). Additionally, Bances, appearing *pro se* at the IPTC, requested that she be appointed counsel, which the Court construed as an oral application for appointment of *pro bono*

counsel. Bances also explained her opposition to YRH's motion for default judgment, which the Court construed as an oral application for relief from default under Rule 55(c) of the Federal Rules of Civil Procedure. For the reasons discussed at the conference and as set forth below, YRH's application for default judgment is DENIED without prejudice; and Bances' oral application for the appointment of *pro bono* counsel is GRANTED. The Court will address each motion *seriatim*.

## YRH'S ORDER TO SHOW CAUSE FOR DEFAULT JUDGMENT

YRH filed an Answer on April 28, 2025, which included crossclaims against Bances to quiet title of the Subject Property. (Doc. 23). To date, Bances has failed to answer or otherwise respond to YRH's crossclaims. Accordingly, upon YRH's application, the Clerk of Court entered a Certificate of Default against Bances on June 12, 2025. (Doc. 49). The Court, on motion by YRH, entered an order to show cause on June 26, 2025, as to why entry of default judgment should not be entered against Bances, with YRH's motion to be addressed at the IPTC. (Doc. 56). Bances failed to file a response or opposition to the order to show cause, but appeared *pro se*, at the IPTC.

Through its motion for default judgment, YRH seeks to quiet title of the Subject Property, specifically requesting a declaration that Bances sold the Subject Property to YRH at a closing on February 3, 2025, properly executing and delivering the deed to YRH on this date. (Def. Br. at 4). YRH alleges that its counsel, on or about March 10, 2025, received a letter from Legal Services of the Hudson Valley, purporting to be on behalf of Bances ("LSHV Letter"), asserting that the above-detailed transaction was a result of fraud. (*Id.* at 5). Specifically, the letter references a "Reader's Digest Sweepstakes" and fraudulent conduct stemming therefrom that resulted in the improper sale of the Subject Property. (Doc. 52-8). As this letter purportedly created an issue of title, YRH asserted the crossclaims at issue against Bances, and argues now, in support of the

application for default judgment, that since Bances cannot demonstrate that YRH had any knowledge of the alleged fraud, default judgment should nevertheless be granted in its favor.

During the IPTC, Bances provided the following narrative surrounding the alleged sale of the Subject Property: Bances was called by an unknown individual and told that she won a prize through a Reader's Digest Sweepstakes, specifically, $16 million in cash, a new car, and a new house, and was subsequently shown and toured the new house. However, Bances was notified that the only way she could receive the cash prize, new car, and new house, was if she sold the Subject Property, her home, for $600,000, and that it needed to be sold quickly. As such, she was picked up in a car by an unknown individual and taken to Queens, where the closing of the Subject Property took place (apparently on February 3, 2025). Notably, Bances stated that she did not know who her lawyer was, only met the lawyer at the closing, and only signed the deed because she was told that she would be going to her new house once the sale was completed. Bances stated that she never received any of the $600,000, or the cash, new car, or new house that she was promised by the unknown caller, and thus alleges the sale was fraudulent. Further, YRH represented that Plaintiff, the mortgage servicer, refused the $521,017.64 (the $600,000 purchase price less attorney's fees paid to Bances' purported counsel) to satisfy Bances' mortgage and that Ms. Kastner is now holding it in escrow.[1]

Then, when it appeared that Bances lost connection during the IPTC, Cox, who represented that she is an employee of Westchester County Department of Senior Programs and Services, stated that she was assisting Bances in an investigation of this fraud, and that there have been referrals

---

[1] YHR's counterclaim against Plaintiff pleads that the payment was refused as insufficient to satisfy the judgment. (Doc. 23 ¶ 54).

made to the Westchester County District Attorney's Office, the New Rochelle Police, and the New York State Attorney General.

In light of the foregoing, entry of a default judgment declaring that Bances sold the Subject Property to YRH at a closing on February 3, 2025, with a properly executed and delivered deed to YRH is inappropriate at this time. Accordingly, YRH's application for a default judgment is denied without prejudice to renew at a later, more appropriate stage of this litigation, should discovery permit such an application.

## BANCES' APPLICATION FOR *PRO BONO* COUNSEL

The *in forma pauperis* statute provides that the courts "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). Unlike in criminal cases, in civil cases, there is no requirement that courts supply indigent litigants with counsel. *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986). Instead, the courts have "broad discretion" when deciding whether to seek *pro bono* representation for a civil litigant. *Id.* Even if a court does believe that a litigant should have a free lawyer, under the *in forma pauperis* statute, a court has no authority to "appoint" counsel, but instead, may only "request" that an attorney volunteer to represent a litigant. *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 301–310 (1989). Moreover, courts do not have funds to pay counsel in civil matters. Courts must therefore request the services of *pro bono* counsel sparingly, and with reference to public benefit, in order to preserve the "precious commodity" of volunteer-lawyer time for those litigants whose causes are truly deserving. *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

In *Hodge*, the Second Circuit Court of Appeals set forth the factors a court should consider in deciding whether to grant a litigant's request for *pro bono* counsel. 802 F.2d at 61-62. Of course, the litigant must first demonstrate that he or she is indigent, for example, by successfully applying

for leave to proceed *in forma pauperis*. The court must then consider whether the litigant's claim "seems likely to be of substance" – "a requirement that must be taken seriously." *Id.* at 60–61. If these threshold requirements are met, the court must next consider such factors as:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues[,] and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Id.*; *see also Cooper*, 877 F.2d at 172 (listing factors courts should consider, including litigant's efforts to obtain counsel). In considering these factors, district courts should neither apply bright-line rules nor automatically deny the request for counsel until the application has survived a dispositive motion. *See Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Rather, each application must be decided on its own facts. *See Hodge*, 802 F.2d at 61.

During the IPTC, Bances requested assignment of *pro bono* counsel to assist her in this case. While Bances has not applied for *in forma pauperis* status, Plaintiff has filed the subject lawsuit against Bances for alleged failure to timely pay mortgage payments, resulting in this foreclosure action; Bances has stated that she has been fraudulently divested of her home; and she did not receive any of the purchase price paid for the property. Accordingly, for the purposes of Bances' oral application, the Court finds that Bances is presumed, and therefore qualifies as, indigent.

Based on the representations made by the parties (and non-party) at the IPTC, the unique circumstances presented, and considering the special solicitude afforded *pro se* litigants, the Court finds that Bances' allegations of fraud, at this early stage, may "likely [] be of substance." *Hodge*, 802 F.2d 61-62. The Court finds that the other *Hodge* factors also weigh in favor of granting Bances' application. Bances has demonstrated a need for counsel to assist with discovery in this

matter concerning the alleged fraud and circumstances leading up to and surrounding the alleged February 3, 2025 closing of the Subject Property, as well as discovery concerning the underlying allegations by Plaintiff, *i.e.*, Bances' failure to make timely mortgage payments. (*See generally*, Am. Compl.). Further, should the Court permit summary judgment motion practice, and/or if this matter proceeds to trial, in this case, representation would "lead to a quicker and more just result by sharpening the issues and shaping examination." *Hodge*, 802 F.2d at 61.

Under the Court's Standing Order regarding the Creation and Administration of the *Pro Bono* Fund (16-MC-0078), *pro bono* counsel may apply to the Court for reimbursement of certain out-of-pocket expenses spent in furtherance of Bances' case. The *Pro Bono* Fund is especially intended for attorneys for whom *pro bono* service is a financial hardship. *See* https://nysd.uscourts.gov/forms/pro-bono-fund-order.

## **CONCLUSION**

For the foregoing reasons, YRH's application for default judgment is DENIED without prejudice to renew at a later stage in this proceeding should it be proper, and Bances' Application for the Court to Request Counsel is GRANTED.

The Court advises Bances that the process for securing *pro bono* representation can be lengthy. The Court circulates pending cases to the bar at regular intervals, after which an attorney must review the case and obtain necessary clearances before contacting Bances to discuss representation. For all these reasons, some time may pass before a litigant is contacted by an attorney. The Court requests that Bances respond promptly to any outreach by a volunteer lawyer seeking to discuss possible *pro bono* representation. As the Court relies on volunteers, there is no guarantee that a volunteer attorney will decide to take the case or that, should the services of the

volunteer be declined, the court will locate another. In either instance, Bances should be prepared

to proceed with the case *pro se*.

The Clerk of Court is respectfully directed to mail a copy of this order to Bances.

SO-ORDERED:

Dated: White Plains, New York
       July 23, 2025

Philip M. Halpern
United States District Judge